UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE C. BROWN,

                Petitioner,                Case No. 1:13-cv-976

v.                                   Honorable Robert J. Jonker

CARMEN PALMER,

                Respondent.

_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner is serving concurrent terms of 33 to 50 years, consecutive to a term of 2 years, imposed by the Kent County Circuit Court on October 28, 2010, after a jury convicted Petitioner of conspiracy to commit armed robbery,  MICH. COMP. LAWS §§ 750.157a and 750.529; armed robbery, MICH. COMP. LAWS § 750.529; and felony firearm, MICH. COMP. LAWS § 750.227b.[1] In his *pro se* petition, Petitioner raises one ground for relief, as follows:

> DEFENDANT HAD A RIGHT TO SELF-REPRESENTATION UNDER THE UNITED STATES CONSTITUTION.  DEFENDANT MADE AT LEAST TWO DEMANDS TO REPRESENT HIMSELF.  BOTH WERE UNEQUIVOCAL. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S REQUEST.

(ECF No. 1, PageID.4.)  Respondent has filed an answer to the petition (ECF No. 15) and submitted the state-court record as required under Rule 5, RULES GOVERNING §2254 CASES.  Upon review of

---

[1]Petitioner's October 28, 2010 sentence is concurrent with a sentence of 19 to 40 years imposed by the Kent County Circuit Court on May 3, 2010, after a jury convicted Petitioner of unarmed robbery, MICH. COMP. LAWS § 750.530.  The sentences imposed on May 3 and October 28, 2010, are consecutive to prior sentences Petitioner must serve because he was on parole when he committed the robbery offenses.

the pleadings and the record, the Court will deny the petition for failure to raise a meritorious federal

claim.

## Procedural History

### A.    Trial Court Proceedings

On April 17, 2008, two men entered the 7-Eleven store on Porter Street in Wyoming,

Michigan.  After grabbing a bag of chips, the men came to the checkout.  One of the men brandished

a handgun and directed store clerk Deandre Long to give them the contents of the register.  Mr. Long

gave them the cash, estimated to be about $50.00, and the men fled.

Mr. Long identified Petitioner as one of the men who robbed the 7-Eleven store.  The

state charged Petitioner with armed robbery.  Following a preliminary examination on June 18, 2008,

Petitioner was bound over on charges of armed robbery, conspiracy to commit armed robbery, and

felony firearm.

Petitioner was tried before a jury beginning October 4, 2010, and concluding on

October 7, 2010.  The jury found Petitioner guilty on all charges.  On October 28, 2010, Petitioner

was sentenced as outlined above.

The evidence admitted at trial and the facts underlying the crime are not critically

important to resolving Petitioner's habeas claim that he was denied his Sixth Amendment right to

represent himself.  Petitioner's claim depends instead on requests for self-representation he made

during the pretrial phase of the proceedings, up to and including the first day of trial.  In evaluating

Petitioner's claim, it is helpful to understand that the armed robbery proceeding was not the only

prosecution against him at that time.  In a separate action, the prosecutor had also charged Petitioner

with one count of unarmed robbery.

Although the armed robbery proceedings were separate from the unarmed robbery proceedings, the two cases followed parallel courses.  The same counsel represented Petitioner in both cases.  Judge Dennis Lieber of the Kent County Circuit Court presided over both cases.  For administrative convenience, certain pretrial matters were conducted for both cases at the same time.[2]

Although Petitioner was represented by the same appointed counsel in both cases, counsel changed frequently as the cases progressed.  Petitioner quickly became disenchanted with his counsel of the moment.  He would file grievances against counsel, counsel would move to withdraw, and new counsel would be appointed.  In the state lower court proceedings, Petitioner was represented by James Howard (Motion to Withdraw Transcript, *Brown II*, ECF No. 9-3) , then James Milanowski (Motion to Withdraw Transcript, *Brown II*, ECF No. 9-4), then John Pyrski (Motion to Withdraw Transcript, *Brown II*, ECF No. 9-7), then Thomas Baynton (Motion to Withdraw Transcript, *Brown II*, ECF No. 9-9), and then Joseph Tevlin.[3]  Attorney Tevlin sought leave to withdraw for the first time during August of 2009 (ECF No. 16-8).   At the hearing, the court expressed its concern that Petitioner was cycling through attorneys for one of two reasons, either as some sort of strategy to delay the proceedings or because he was not competent to assist in his own defense. (Motion to Withdraw Transcript, *Brown II*, ECF No. 9-11, PageID.264-65.) Accordingly, the court denied the motion to withdraw and ordered an evaluation of Petitioner's competence.  (*Id*.)

---

[2]The overlap between the two cases is readily apparent when one compares the Rule 5 materials for this case with the Rule 5 materials submitted in *Brown v. Winn*, No. 1:14-cv-1184 (W.D. Mich.) (herein *Brown II*), the habeas case Petitioner filed challenging his unarmed robbery conviction and sentence.

[3]David LaGrand was appointed for just three days after Thomas Baynton withdrew.  The circumstances attendant to his withdrawal and the substitution of Joseph Tevlin, other than as cryptically described in the circuit court docket, are not apparent in the record.  (ECF No. 16-1, PageID.208.)

Subsequent to the hearing on Attorney Tevlin's motion to withdraw, Petitioner requested self-representation for the first time. In a handwritten letter that Petitioner directed to the circuit court during September of 2009, Petitioner states: "I, Andre C. Brown request to represent myself in both Armed/unArmed Robbery cases, with co-counsel." (ECF No. 16-9, PageID.246.) Prior to that letter, the record does not include any request for self-representation by Petitioner.[4] Indeed, at a hearing on August 14, 2009, Petitioner stated and then repeated: "I never said I wanted to represent myself." (Motion to Withdraw Transcript, *Brown II*, ECF No. 9-11, PageID.265.)[5]

Subsequent to the September letter, Petitioner's competence was evaluated. The results of that evaluation were offered in evidence at a hearing on December 16, 2009. Based on that hearing, the circuit court concluded that Petitioner was competent to assist in his defense and stand trial and that he was cycling through counsel as some sort of strategy to foster delay. (ECF No. 16-10, PageID.250.)[6] Based on that conclusion, and to avoid further delay, the court denied Attorney Tevlin's renewed motion to withdraw. (*Id*.) The hearing concluded with the following exchange:

THE DEFENDANT:  I don't want Mr. Tevlin to represent me.

---

[4]In a letter to Judge Paul Sullivan, then chief judge of the Kent County Circuit Court, dated October 5, 2008, Mr Brown noted: "All motions sent to Judge Dennis Leiber was denied, And in this process Judge Leiber quoted 'Mark Twain' calling me a fool for desiring to represent myself, . . . ." (ECF No. 16-4.) The hearing at which Judge Leiber made that comment occurred on June 27, 2008 in the unarmed robbery case (Motion to Withdraw Transcript, *Brown II*, ECF No. 9-3, PageID.243). The comment was not made in response to any request by Petitioner to represent himself; rather, it was made to support a suggestion that Petitioner might be better served to rely on the advice of his competent counsel instead of rejecting their advice in favor of Petitioner's preferred course of action. (*Id*.) The October 5, 2008, letter cannot be construed as a request for self-representation.

[5]Petitioner made that representation at the hearing on Attorney Tevlin's motion to withdraw. In the motion, Attorney Tevlin stated: "It is apparent that Mr. Brown desires to represent himself at the trials in these matters, given that he refuses to accept or acknowledge any statements or opinions given to him by legal counsel." (ECF No. 16-8, PageID.243.) Petitioner clearly disclaimed that intention.

[6]To the extent the many changes in counsel was a strategem to cause delay, it proved successful. Petitioner's armed robbery trial commenced nearly two and one-half years after the robbery.

THE COURT: If he is not of good behavior, he will not be permitted to remain in the courtroom, and we'll try him in absentia, but these cases will continue without adjournment.

THE DEFENDANT:  I would like to represent myself.  I have a constitutional right to represent myself.

THE COURT: That motion is denied, sir.  Mr. Tevlin will represent you.

THE DEFENDANT:  All right.

(*Id*.)

On March 15, 2010, Petitioner's trial on the unarmed robbery charge commenced. After the jury was selected and sworn, Attorney Tevlin again advised the court that Petitioner wanted to represent himself and asked the court to consider the request and to make the findings required by *People v. Anderson*, 247 N.W. 2d 857 (Mich. 1976).  (March 15, 2010 Trial Transcript, *Brown II*, ECF No. 9-15, PageID.299.)  When the court asked Petitioner to confirm his desire for self-representation, Petitioner noted counsel's shortcomings and Petitioner's dissatisfaction with the trial strategy and then stated:

So, I don't know if that would be ineffective Counsel–ineffective assistance of counseling which will violate my Sixth Amendment, but I do know that it's–if, you know, if–if–if–if I'm just going to be railroaded and not have–I would take the chance of getting myself cooked on the stand if I'm not going to have the things needed provided by counsel, provided by law as far as witnesses and different other elements needed to show that I am innocent by a thousand percent from this case right here.  And, that's all I have to say about that.

(*Id*., PageID.300.) The court denied the motion.  The court noted that the right to self-representation depends on a three-fold showing: (1) the request must be unequivocal; (2) the request must be knowing, intelligent, and voluntary; and (3) the request must not impose undue inconvenience or burden on the court.  (*Id*., PageID.301-02.)  The court concluded that Petitioner's request was not

unequivocal in that it was premised on his ability to obtain testimony of witnesses who had not yet been called into court by subpoena. (*Id.*)  The court further concluded that granting the request would create undue delay, inconvenience and burden. (*Id.*)

The trial went forward.  Petitioner was represented by Mr. Tevlin.  The transcript reveals that Mr. Tevlin proceeded with certain lines of questioning at the behest of Petitioner, *see i.e.* (March 16, 2010 Trial Transcript, *Brown II*, ECF No. 9-16, PageID.315-16), and even read a closing prepared by Petitioner (March 17, 2010 Trial Transcript, *Brown II*, ECF No. 9-17, PageID.344).  The jury found Petitioner guilty of unarmed robbery. (Id., PageID.345.)  Petitioner was afforded the opportunity to address the court and argue on his own behalf at sentencing. (Sentencing Transcript, Brown II, ECF No. 9-18.)

During preparations for Petitioner's armed robbery trial, Attorney Tevlin again moved to withdraw as counsel. (ECF No. 16-12.)  The court expressed reluctance to permit the withdrawal and delay proceedings once again (Motion to Withdraw Transcript, ECF No. 16-13), but ultimately permitted Attorney Tevlin to withdraw and appointed Attorney Myra Jabaay (ECF No. 16-1, PageID.213). As a result, Petitioner's trial was postponed until October of 2010.

On October 4, 2010, after the court ruled on several pretrial motions but before the jury was selected, Petitioner raised several issues, addressing the court directly.  After claiming that all seven of his attorneys had been ineffective, Petitioner reminded the court that he had previously asked to represent himself, prompting the following exchange:

> THE DEFENDANT:  . . . . I have requested and requested on the record, on transcripts to represent myself in this court several times.  I have the right under the Constitution if I'm not getting along with any attorneys to represent myself if I feel that they are not competent.  This–this–

THE COURT: I'm sorry.  See, that's–that's the problem you have.  You have a misunderstanding of the law.  That is not the law.

THE DEFENDANT: Oh, I can't represent–I don't have the right to represent myself?

THE COURT: Your statement of what you said is absolutely incorrect.

THE DEFENDANT:  I'm asking you do I have the right to represent myself?

THE COURT: It [is a b]alancing test.  There are factors to be considered.  And, frankly, I've had enough colloquy with you–

THE DEFENDANT:  After the competency hearing, after you ran a competency hearing--

THE COURT: Well, I can't–if you don't want me to answer the question by interrupting me, I won't do so.

THE DEFENDANT:  I apologize, sir.  You're right.

THE COURT: All right.  We're going to call for the jury then and–

THE DEFENDANT:  It's enough?  You don't want me to talk on the record–

THE COURT: –I'll check with the prosecutor to see if there are other cases.  Thank you.

(October 4, 2010 Trial Transcript, ECF No. 16-14, PageID.387-88.)  That is the last mention of self-representation in the trial record.[7]  The jury found Petitioner guilty on all three counts.  (October 7, 2010 Trial Transcript, ECF No. 16-17.)  Petitioner was sentenced to concurrent terms of 33 years

---

[7]Petitioner raised the issue for the last time at sentencing.  As part of a lengthy statement, Petitioner noted:

[T]he Judge, in his feeble opinion, thought it was part of a conscious strategy to avoid trial and not assist in his defense.  But the truth is, I have requested numerous times to represent myself, as the U.S. and State Constitution guarantees under the U.S. Constitutional Amendment VI, Michigan Constitution, Article 1, Section 13.  Judge Leiber on October 4th, 2010, refused my right to self-represent.

(Sentencing Transcript, ECF No. 16-18, PageID.515.)

to 50 years on the armed robbery and conspiracy to commit armed robbery counts, consecutive to

a term of two years on the felony firearm count.  (Sentencing Transcript, ECF No. 16-18.)

### B.      Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals.  His brief, which

was filed by counsel, raised the same issue raised in this application for habeas corpus relief.  (See

Def.-Appellant's Br. on Appeal, ECF No. 1-1, PageID.39.)    By unpublished opinion issued on

December 20, 2011, the Michigan Court of Appeals rejected Petitioner's argument and affirmed

Petitioner's convictions and sentences.  (Michigan Court of Appeals Opinion, ECF No. 16-25.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme

Court.  Petitioner raised the same claim raised before and rejected by the Michigan Court of Appeals.

By order entered September 4, 2012, the Michigan Supreme Court denied his application for leave

to appeal because it was not persuaded that the questions presented should be reviewed.  (Michigan

Supreme Court Order, ECF No.16-25.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996,

PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has

"drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir.

2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant

to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits

in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372,

1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d

at 655.  In determining whether federal law is clearly established, the Court may not consider the

decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.

Moreover, "clearly established Federal law" does not include decisions of the Supreme Court

announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38

(2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-

court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*,

132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state

court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

decides a case differently than the Supreme Court has done on a set of materially indistinguishable

facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas

petitioner is required to 'show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at

*3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise

contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a

prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks

omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*,

160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v.

Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA,

I find that Petitioner is not entitled to relief.

### Discussion

The Sixth Amendment provides that a criminal defendant shall have the right to the

assistance of counsel for his defense.  U.S. Const. amend. VI.  At issue here is a corollary to that

right, the right to self-representation. *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942) ("The

right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal

formalisms.").   The clearly established federal law regarding self-representation is expressed in two

Supreme Court cases: *Faretta v. California* 422 U.S. 806 (1975) and *Martinez v. Ct. of Appeal of

Cal., Fourth App. Dist.*, 528 U.S. 152 (2000).

In *Faretta*, the Court found support for the right of self-representation in the structure of the Sixth Amendment right to the assistance of counsel:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

> The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

*Faretta*, 422 U.S. at 819-821 (footnotes and citations omitted).  Although the Court recognized a criminal defendant's right to self-representation, it acknowledged that the right was a qualified one. The Constitutional mandate to provide counsel to a criminal defendant is premised upon the fact that "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834.  Because a criminal defendant representing himself relinquishes that benefit, his waiver must be "'knowingly and intelligently'" made. *Id.* at

835. Moreover, the right to self-representation must yield to "'the dignity of the courtroom.'" *Id.*

at 834, n. 46. It is not a license to ignore the rules of procedure or engage in "obstructionist

misconduct." *Id.*

In *Martinez*, 528 U.S. 152, the Supreme Court concluded that the right of self-

representation did not extend to appeals. In reaching its conclusion, the Supreme Court commented

on the scope of the right of self-representation established in *Faretta*, stating:

> As the *Faretta* opinion recognized, the right to self-representation is not
> absolute. The defendant must "'voluntarily and intelligently'" elect to conduct his
> own defense, and most courts require him to do so in a timely manner. He must first
> be "made aware of the dangers and disadvantages of self-representation." A trial
> judge may also terminate self-representation or appoint "standby counsel"- even over
> the defendant's objection - if necessary. We have further held that standby counsel
> may participate in the trial proceedings, even without the express consent of the
> defendant, as long as that participation does not "seriously undermin[e]" the "
> appearance before the jury" that the defendant is representing himself. Additionally,
> the trial judge is under no duty to provide personal instruction on courtroom
> procedure or to perform any legal "chores" for the defendant that counsel would
> normally carry out. Even at the trial level, therefore, the government's interest in
> ensuring the integrity and efficiency of the trial at times outweighs the defendant's
> interest in acting as his own lawyer.

*Martinez*, 528 U.S. at 161-162 (citations and footnote omitted).

Neither the trial court nor the state appellate court referenced *Faretta* or *Martinez* in

evaluating Petitioner's request to represent himself. Instead, the state courts relied on *People v.*

*Anderson*, 247 N.W.2d 857 (Mich. 1976). In *Anderson* the Michigan Supreme Court established

three requirements that must be met before a criminal defendant in Michigan can proceed *pro se:*

> First, the request must be unequivocal . . . . Second, once the defendant has
> unequivocally declared his desire to proceed Pro se the trial court must determine
> whether defendant is asserting his right knowingly, intelligently and
> voluntarily. . . . The third and final requirement is that the trial judge determine that
> the defendant's acting as his own counsel will not disrupt, unduly inconvenience and
> burden the court and the administration of the court's business.

*Anderson,* 247 N.W.2d at 859-860.  The Michigan Supreme Court drew the requirements directly from the circumstances that swayed the *Faretta* Court to recognize the right of self-representation. *Id.* at 859 ("[T]he [*Faretta*] Court carefully noted the circumstances under which Faretta was deprived of his constitutional right to conduct his own defense.  The circumstances, affirmatively shown by the record, involved a clear and unequivocal request, weeks before trial, by a literate, competent, and understanding individual.")  Thus, considering Petitioner's request for self-representation under *Anderson* is consistent with and not contrary to clearly established federal law.

Here, the trial court considered and ruled on Petitioner's request for the first time on December 16, 2009,[8] after he had determined that Petitioner was competent to make the request. After recognizing that Petitioner had cycled through several attorneys and thereby caused significant delay, the trial court concluded that delay was Petitioner's purpose.  (ECF No. 16-10, PageID.250.)[9] The court further concluded that inviting further delay by changing counsel or permitting Petitioner to represent himself, would result in manifest injustice for Petitioner and the prosecution.  (*Id.*) Accordingly, the trial court denied Petitioner's request and Attorney Tevlin's motion to withdraw. After that hearing, Petitioner made no requests for self-representation other than on the first day of his unarmed robbery trial and the first day of his armed robbery trial.

---

[8]Petitioner made the request orally at the hearing (ECF No. 16-10, PageID.250), and by letter in September of 2009 (ECF No. 16-9).

[9]The Michigan Court of Appeals affirmed the trial court's denial of Petitioner's request on the ground that, considered over the entire course of both proceedings, Petitioner's requests were not unequivocal. *People v. Brown*, No. 301789 (Mich. App. December 20, 2011).  The trial court certainly relied on that conclusion, as well as the issue of delay, when it denied Petitioner's request on the first day of his unarmed robbery trial.  (March 15, 2010 Trial Transcript, *Brown II*, ECF No. 9-15, PageID.301-02.)  The trial court did not mention the equivocal nature of Petitioner's request on December 16, 2009, relying instead on the issues of delay and, therefore, timeliness.  Because timeliness considerations expressly supported the trial court's initial and subsequent denials, and because timeliness is dispositive with respect to each request, this Court has centered its analysis on that issue.

The trial court's consideration of the timeliness of Petitioner's requests and concern regarding the delay that would follow from granting them is in no way contrary to clearly established federal law.  In *Hill v. Curtin*, 792 F.3d 670 (2015) (en banc), the Sixth Circuit explained:

> *Faretta* did not establish a bright-line rule for timeliness.  Its holding does, however, necessarily incorporate a loose timing element. The *Faretta* Court explicitly stated that the defendant's request was "[w]ell before the date of trial," and "weeks before trial." It then held, "[i]n forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." Thus, to the extent that Faretta addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial.
>
> Beyond this loose limit, the *Faretta* Court did not address timeliness . . . . Although lower courts have since established rules regarding when a defendant must assert his right, . . . the Supreme Court has never defined the precise contours of *Faretta's* timing element.  Nor did the Supreme Court announce any clearly established law on timeliness in *Martinez*. . . . Given the general standard articulated in *Faretta*, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

*Hill*, 792 F.3d at 678-79 (citations omitted, emphasis in original).

In light of the latitude afforded to state courts in determining the timeliness of a self-representation request, denial of such a request on the morning of trial is certainly not contrary to or an unreasonable application of clearly established federal law.  *Hill*, 792 F.3d at 678 ("'[*Faretta* ] can only be read to require a court to grant a self-representation request when the request occurs *weeks before trial*' –not on the morning of trial."); *Jones v. Bell*, 801 F.3d 556, 564-65 (6th Cir. 2015) (concluding that state court's rejection of a self-representation request on the first day of trial was not contrary to *Faretta*).  The denial of Petitioner's request  in December of 2009, however,

approximately twelve weeks before his first of two trials was scheduled to begin,[10] would appear to be closer to the claim implicitly determined to be timely in *Faretta*.

But considerations of timeliness are not limited to the number of weeks between the request for self-representation and the trial. In *United States v. Cunningham*, 564 F. App'x 190 (6th Cir. 2014), the Sixth Circuit acknowledged that the timeliness determination contemplated by *Faretta* is "multifaceted." *Id.* at 193. "Courts consider not only the actual timing of the defendant's request, but also any threat posed to the orderly progression and integrity of the trial by a defendant's dilatory intent . . . ." *Id.; see also Robards v. Rees,* 789 F.2d 379, 383 (6th Cir. 1986) (noting that requests that are "timely" may be denied where "the defendants' request for self-representation is merely a tactic to secure delay in the proceeding."); *Halder v. Tibals*, 561 F. App'x 454, 463 (6th Cir. 2014) ("This court has explained that a request to represent oneself is untimely . . . '[if it] is merely a tactic to secure delay in the proceeding.'"). Accordingly, the trial court's denial of Petitioner's request following the competency hearing based on its determination that Petitioner intended to delay the proceedings was not contrary to or an unreasonable application of clearly established federal law.

Petitioner also contends that the trial court erred by not undertaking the inquiry necessary to determine whether Petitioner's request was knowing and voluntary under *Anderson*, 247 N.W.2d at 857, and Michigan Court Rule 6.005. To the extent that Petitioner claims that the trial court failed to comply with requirements of state law, his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in

---

[10]After the competency hearing, the court scheduled Petitioner's armed robbery trial to begin April 19, 2010 (Docket Sheet, ECF No. 16-1, PageID.211), and his unarmed robbery trial to begin March 15, 2010 (Docket Sheet, *Brown II*, ECF No. 9-1, PageID.196).

violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Moreover, although the inquiry Petitioner seeks may be constitutionally required before granting a request for self-representation, it is not constitutionally required before denying the request on grounds of timeliness. *See Hill*, 792 F.3d at 677-78 ("[T]he U.S. Supreme Court has never held that a court must inquire into the basis of a defendant's request before denying it as untimely.")

### Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue

must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:      July 29, 2016              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE